MILLER et al. v. RINEHART.

(*Supreme Court, General Term, First Department.* May 18, 1888.)

GUARANTY—PAYMENT BY PRINCIPAL—DISCHARGE OF GUARANTOR.

Defendant, having executed an instrument guarantying the payment of certain bonds, executed another instrument reciting the first, and that it was desired to have the bonds surrendered and canceled, and new securities substituted, to which the bondholder had agreed, and therefore agrees that the obligation created and incurred by the first instrument should remain in full force and effect, notwithstanding anything that might happen, and declares this paper to be a continuing, running guaranty for the payment of the amount of the bonds and interest, and guarantying any and all securities, acts, paper writings, and proceedings of said obligor (an association) in relation to the bondholder and its indebtedness to her. After this an agreement was executed between the association on the one part, and all its bondholders on the other, for the sale to the bondholders of certain property, at a price equal to the amount of its bonds, to be paid by the surrender of said bonds. *Held*, that defendant was liable only as guarantor of the bonds; and, these having been paid by the transactions between the association and the bondholder, he was discharged.

Appeal from judgment on report of referee.

Action upon a guaranty brought by Miriam C. Miller and others against Egbert Rinehart. The Sea-Cliff & Metropolitan Camp-Ground Association issued certain of its bonds, which were secured by a second mortgage upon its real estate, and by a chattel mortgage upon its personal property. Twelve of these bonds, of the par value of $12,000, were purchased by one William Miller. The payment of three of these bonds was guarantied by the defendant, by the following instrument of guaranty: "NEW YORK, November 21, 1876. In consideration of the sum of one dollar, to me in hand paid by Dr.

Wm. Miller, the receipt whereof is hereby acknowledged, I hereby guaranty to him the payment of three certain bonds numbered 16, 17, and 18, being three of a series of mortgage bonds made by the Sea-Cliff Grove & Metropolitan Camp-Ground Association, of one thousand dollars each, dated the 1st day of October, 1876, payable five years from date, with interest at seven per cent., payable semi-annually, on the 1st days of April and October, at the National Shoe & Leather Bank. This guaranty to include principal and interest. Witness my hand this 4th day of December, 1876. Egbert Rinehart." On the 4th day of April, 1878, William Miller died, leaving a last will and testament, which was in August, 1878, admitted to probate, and letters testamentary issued thereon to Dorothy B. Miller. In February, 1880, the defendant duly executed the following paper:

"Whereas, on the 21st day of November, or the 4th day of December, 1876, I, Egbert Rinehart, did guaranty the payment to Dr. William Miller of the three bonds mentioned in the paper hereunto annexed, and marked 'A,' as in said paper is mentioned, (which said bonds are now the property of Mrs. D. B. Miller, widow of said William Miller;) and whereas, said bonds are a lien on the lands and real estate of the association mentioned in said paper A, which paper is made a part of this instrument; and whereas, I also desire the surrender and cancellation of said bonds, and the substitution of other securities in the place thereof, to which the said D. B. Miller has consented and agreed: now therefore, in consideration of the premises, and of the sum of one dollar to me in hand paid by said D. B. Miller, and also divers other good and valuable considerations to me paid, the receipt of which is hereby confessed and acknowledged, I, the said Egbert Rinehart, do hereby agree and further guaranty to and with said D. B. Miller that, in the event that any or all of the matters and things hereinbefore mentioned or referred to shall happen, or in case the said bonds or my said guaranty shall be canceled or destroyed, or otherwise disposed of, as required by said association hereafter, and in spite of and notwithstanding anything that may happen or be done at the request of said association, or in behalf thereof, my aforesaid guaranty of said bonds, and my obligation created and incurred by reason of said guaranty, shall remain in full character and effect; and this is hereby declared to be a continuing, running guaranty for the payment of said sum of three thousand dollars and interest, (according to the original terms of said original guaranty,) attached to and belonging to and guarantying any and all securities, acts, paper writings, and proceedings of said association in relation to the said D. B. Miller, and of its indebtedness to her hereafter to be done, continued, or made.

"As witness my hand and seal, this 18th day of February, A. D. 1880.

        "Egbert Rinehart. [L. s.]

"In presence of Duncan Campbell."

This paper was prepared by the attorney of Mrs. Miller, and at the time of its preparation and execution neither Mrs. Miller nor her attorney, nor the attorney for the defendant, knew the specific details of the agreement which was thereafter executed by the holders of the bonds of said association of the one part, and by said association of the other part. After the execution of the said guaranty an agreement was executed between the said association and its bondholders, among which was Mrs. Miller, whereby it agreed to sell to one John H. Stout, as trustee for said bondholders, certain property, real and personal, and whereby the said bondholders agreed to purchase said property at the price of $78,200, (being the amount of bonds held by them;) and to pay said sum in the bonds of the association, which bonds were secured by a mortgage upon the property of the association, and which the bondholders agreed to cancel, and which bonds (it being understood that there is nothing due thereon when said bonds should be surrendered) they agreed to surrender and deliver up on receiving the conveyance above men-

tioned. This contract was thereafter fully executed by the association and the bondholders in all respects, and the trustee therein named fully performed his trust, and Mrs. Miller received from the lots assigned to her $3,119; one-quarter of which, $779.85, she claimed the right to apply upon the $3,000 guarantied by the defendant. Mrs. Miller and Lillie May Miller, her daughter, having died, one James F. Buck was duly appointed executor of both Mr. and Mrs. Miller, and also administrator of Miss Miller, and in September, 1885, duly assigned to the plaintiffs all claims upon instruments executed by the defendant, and subsequently this action was brought to recover $2,220.25, the balance of said $3,000 claimed to be due upon the guaranty of the defendant. The defendant claimed, among other things, discharge of guaranty by payment of the bonds. The action having been referred, and the referee having reported in favor of the plaintiffs, from the judgment thereupon entered this appeal was taken.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*G. H. Crawford,* for appellant. *Benjamin Estes,* for respondents.

VAN BRUNT, P. J. It is difficult to see upon what theory the conclusion of the learned referee can be sustained. Both the counsel for the plaintiffs and the referee seem to have fallen into an error in the construction of the papers which were signed by the defendant. The counsel claims that the first paper signed, made the defendant liable to the same extent as a principal debtor, because it was a separate and independent covenant to pay. The language of the instrument, however, is at variance with this claim. The paper is a guaranty, and nothing more. It is a collateral agreement to pay, such as would have been void under the statute of frauds if not in writing. It created no original obligation. Liability was dependent upon the breach of its obligation by the principal debtor. It was simply a guaranty of payment, not an absolute promise. The agreement by the defendant was: "If it does not pay, I will;" and he entered into no further or other obligation. The principal debtor must make default before the guarantor became liable.

The learned referee concedes the fact that the first paper signed was a mere guaranty; and that, if that paper only existed, no cause of action remained; but he bases his conclusion upon the claim that the second paper signed by the defendant, of February, 1880, is substantially a new contract, having a valid consideration, and that all parties intended that the defendant should make Mrs. Miller whole to the extent of the $3,000 in bonds held by her. If such was the intention of the parties, their object has not been accomplished by the instrument executed by them. The paper of February, 1880, after its recital, simply declares that the obligation created and incurred by the first guaranty should remain in full force and effect, notwithstanding what might happen, and declares this paper to be a continuing, running guaranty, for the payment of the sum of $3,000 and interest, according to the original terms of said original guaranty, attached to and belonging to and guarantying any and all securities, acts, paper writings, and proceedings of said association in relation to Mrs. Miller, and of its indebtedness to her, hereafter to be done, continued, or made. This instrument simply continued the original guaranty. There was no obligation entered into other than that of guaranty. This is no promise to pay absolutely. The understanding is, as it was before, collateral to the bonds, and nothing else. It might well have been that if there had been an original indebtedness to which the bonds were held as collateral, that then this last instrument of guaranty might have had some force after the surrender of the bonds with the consent of the guarantor; but the only debt was that represented by the bonds. It is true that the learned referee assumes that these bonds were held as collateral security to an indebtedness of the association to Dr. Miller, but in this he is clearly mistaken, as the complaint alleges the purchase by Dr. Miller of these bonds, which allegation

is not denied by the answer, and therefore admitted; and this error may explain, therefore, the erroneous conclusion to which he arrived. There was no debt, therefore, to which the bonds were held as collateral; and, when the bonds were paid, no debt existed to which the guaranty attached. The paper in question speaks of guaranty all the way through. It is a reiteration of the guaranty of the bonds, and nothing more, and it is expressly stated to be a guaranty according to the original terms of said original guaranty. It therefore seems clear that if the bonds, the payment of which was guarantied, have been paid, then no further obligation remains, as that which was guarantied has been done. There cannot be found within the instrument any agreement to pay other than by way of guaranty of the bonds. This is the only obligation created; and, when the principal debtor was discharged, the guarantor was equally released.

These bonds were paid by the transactions between the association and its bondholders. The association agreed to sell certain of its property to its bondholders for a specified price, and to take its bonds in payment therefor. The bondholders agreed to buy, and to pay in bonds. The property contracted for is conveyed by the association, and the bondholders pay for the same by surrendering to the association their bonds at par. By this transaction the bonds were paid, and there was no further claim upon them against the association, and thus was wiped out the original debt guarantied, and nothing remained to which the collateral obligation could attach. It is true that the second guaranty speaks of the cancellation of the bonds; but fails to recognize the fact that, the bonds canceled, there is nothing to guaranty; and hence it omits to provide for such a contingency, but apparently proceeds upon the theory that a guaranty of a debt may be binding after the debt is canceled and paid. We can find nothing in these papers but a guaranty of these bonds; and, although the parties may have intended differently, they have done nothing more by the instrument in question than reassert the guaranty already existing, and there does not seem to have been any other design than that the paper should be considered as a guaranty.

We are of the opinion, therefore, that the judgment must be reversed, and a new trial ordered, with costs to the appellant, to abide the event.

BRADY and DANIELS, JJ., concur.